Matthew R. Arnold
DC Bar No. 1618616
EUBANKS & ASSOCIATES, PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
matt@eubankslegal.com
(843) 718-4513

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
## TUCSON DIVISION

| | |
|---|---|
| Center for Biological Diversity, et al., | ) |
| | ) |
| Plaintiffs, | )    No. CV-22-412-TUC-JAS(AMM) |
| | ) |
| v. | ) |
| | )    **MOTION TO** |
| Randy Moore, et al., | )    **ALTER OR AMEND** |
| | )    **FINAL JUDGMENT** |
| Defendants. | ) |
| | ) |

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiffs Center for Biological

Diversity, Maricopa Audubon Society, and Mount Graham Coalition respectfully move this

Court to alter or amend the portion of its final judgment remanding the challenged Incidental

Take Statements ("ITSs"), ECF No. 152, so as to require the remand proceedings be completed

by a date certain. The modest alteration requested here is warranted here for the reasons

explained below.[1]

## **BACKGROUND**

Plaintiffs filed this suit under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-

1544, on September 13, 2022, challenging two Biological Opinions ("BiOps") that authorize the

otherwise unlawful take of the United States' "most endangered species"—the Mount Graham

---

[1] Plaintiffs' counsel has conferred about the requested relief with Defendants' counsel, who represented that: "The agencies have advised the Court and counsel that they believe the issues that the Court identified with the incidental take statements can be readily remedied. Defendants have advised Plaintiffs, through counsel, that the work is underway. Accordingly, our intention at this time is to oppose the motion."

1    red squirrel. *See* ECF No. 1 at 2 (Compl.). Both BiOps include an ITS that permits the sublethal

2    take via harassment of "all" squirrels that are or will be found in two areas on Mount Graham—

3    the Old Columbine Summer Homes ("Cabins") and an organizational camp ("Camp"). These

4    two areas are crucial to the species' survival and recovery because, due to systemic habitat

5    damage and successive wildfires, these areas are some of the only remaining canopied habitat on

6    Mount Graham that can sustain the squirrel and the temperature-sensitive middens that are

7    central to its life cycle.

8         Throughout this case, Plaintiffs have explained that the Camp and Cabins BiOps are

9    legally deficient under the ESA for numerous reasons. For example, Plaintiffs have repeatedly

10   stressed that "there is no 'causal link between the [ITS] and take of the listed species,' as

11   required by the ESA's implementing regulations." ECF No. 130-1 at 38 (quoting 50 C.F.R. §

12   402.14(i)(1)(i)). Indeed, neither ITS provides an objective, verifiable metric for determining

13   when middens have been abandoned due to the Camp and Cabins; in other words, neither ITS

14   fulfills its most basic function: placing a numerically equivalent limit on the amount of incidental

15   take actually authorized by the ITSs. ECF No. 130 at 38-39; ECF No. 136 at 25-29.

16        On February 16, 2024, then-Magistrate Judge Martinez filed a Report recommending

17   granting in part and denying in part the parties' cross-motions for summary judgment. *See* ECF

18   No. 141. As to the ITS, the Report agreed with Plaintiffs on the ITS issue, finding that the ITS

19   violates the APA and ESA because it "fail[s] to set forth a clear and objectively verifiable

20   standard for determining whether anticipated take has been exceeded due to the proposed actions

21   . . . ." *Id.* at 17-18. By declining to specify when midden absence in the action areas has been

22   caused by these actions' effects—as opposed to an undefined list of "extraneous factors"—the

23   ITSs impermissibly reserve "unfettered discretion" to Defendants to determine "when the level

1  of anticipated take has been exceeded" and, therefore, when (if ever) further consultation is

2  necessary to prevent jeopardy to the squirrel. *Id.* (citing *Ariz. Cattle Growers' Ass'n v. U.S. Fish*

3  *& Wildlife Serv.*, 273 F.3d 1229, 1251 (9th Cir. 2001)). The Report characterized this as a "purely

4  legal" issue, and thus recommended remanding both ITSs so that Defendants may produce new

5  authorizations that specify "when anticipated take has been exceeded as a result of the proposed

6  actions." *Id.* at 18, 19.

7          In their objections to the Report, filed on March 15, 2024, Defendants abandoned their

8  prior defense of the ITSs, thereby waiving any further argument that those decisions can be

9  maintained under the ESA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).

10  ECF No. 144 at 10; *see also* ECF No. 151 at 1 (deeming "waived" any "arguments[] and issues

11  that were not timely and properly raised before United States Magistrate Martinez"). According

12  to Defendants, the ITS defects identified by the Report "can be readily remedied by the Service

13  *well before* the trigger could be invoked." ECF No. 146 at 10 (emphasis added). Defendants were

14  so confident in their ability to remedy the ITS promptly that they asked the Court to "pause this

15  litigation" "during a brief remand before any ruling on the merits," so that Defendants could craft

16  a new ITS for each action that cured the defects identified in the Report. ECF No. 144 at 9, 10

17  n.7; *see also* ECF No. 146-1 at 3 (representing, in a sworn declaration from an agency employee

18  attached to Defendants' response filed on the final day of briefing in this case, that the consulting

19  agencies "believe" they can remedy the ITS problems "well before the [existing ITS]," which

20  they now concede is unlawful, "could possibly be triggered in fall 2025").

21          On August 30, 2024, this Court entered its Order adopting the finding that the ITSs, as

22  currently formulated, violate the ESA and the APA. *See* ECF 151 at 3. Thus, the Court's final

23  judgment, entered the same day as its order, remanded the faulty ITSs to Defendants for the

1   determination of "a clear standard for when anticipated take has been exceeded as a result of the

2   [Camp and Cabins]." ECF No. 152 (Judgment). Although vacatur would "normally accompan[y]

3   a remand" of a flawed ITS, *All. for Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121-22

4   (9th Cir. 2018), the Court's order finds such relief here unnecessary due to "the circumstances of

5   this case." *Id.* at 3 n.4 (citation omitted).[2]

6        The Court's judgment thus leaves the flawed ITSs in place during the remand, but does

7   not specify any timeframe by which Defendants are expected to cure those admittedly arbitrary

8   decisions. *See* ECF No. 152. In practice, this open-ended remand allows these activities to

9   exceed the amount of previously authorized take without any effective way of monitoring such

10   take, let alone any effective means of triggering new consultation on the basis of such

11   exceedances.

12                   **ARGUMENT**

13        Plaintiffs respectfully request that this Court amend its judgment to order completion of

14   remand proceedings, i.e., the formulation of a new ITSs for these activities that set a "clear

15   standard for when anticipated take has been exceeded as a result of the proposed actions," ECF

16   No. 152—within a reasonable, but specified, timeframe (e.g., 60 days from the date of any order

17   resolving this motion). As explained in greater detail below, this modest alteration to the Court's

18   judgment is especially prudent here and consistent with comparable remedies in ESA cases,

19   where ongoing project actions threaten a critically imperiled species and Defendants have a

20   demonstrated pattern of delay when dealing with the squirrel.

---

[2] The Court's order adopting the Report states that "the R[eport] recommends a limited remand (without vacatur)," ECF No. 151 at 3 n.4; however, Plaintiffs are unaware of and could not locate any such recommendation in the Report.

Federal Rule of Civil Procedure 59 allows any party to ask the Court "to alter or amend a judgment" via motion filed "no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc) (per curiam)). "In general, there are four basic grounds upon which a Rule 59(e) motion may be granted," including when the request is: (1) "necessary to correct manifest errors of law or fact upon which the judgment rests"; (2) "necessary to present newly discovered or previously unavailable evidence"; (3) "necessary to prevent manifest injustice"; or (4) "justified by an intervening change in controlling law." *Allstate*, 634 F.3d at 1111. However, "a court reviewing a Rule 59 motion is not 'limited merely to these four situations' in unusual situations." *Romo v. United States*, No. 4:12-CV-041, 2015 WL 11182027, *1 (D. Ariz. July 22, 2015) (Soto, J.) (quoting *Allstate*, 634 F.3d at 1111). Applying this standard, courts have observed that "[t]here is no precise definition of what constitutes 'manifest injustice'" in the Rule 59(e) analysis, "though the term obviously contemplates prejudice to the moving party." *AARP v. U.S. Equal Emp. Opportunity Comm'n*, 292 F. Supp. 3d 238, 241 (D.D.C. 2017) (internal citation omitted) (citing *Piper v. U.S. Dep't of Justice*, 312 F. Supp. 2d 17, 22 (D.D.C. 2004)).

In cases arising under the ESA, courts have specifically utilized Rule 59(e) to address post-judgment remedy questions, including requests to impose conditions on a remand without vacatur when that remand might otherwise result in manifest injustice or prejudice to the moving party. *See Otter v. Salazar*, No. 1:11-cv-00358, 2012 WL 12517198 (D. Idaho Dec. 4, 2012) (arguing that the district court's vacatur of an ESA listing decision would "result in manifest

1    injustice," Defendant U.S. Fish and Wildlife Service moved under Rule 59(e) to reinstate the

2    decision during remand); *Ctr. for Biological Diversity v. Jewell*, No. 14-cv-02506, 2017 WL

3    8788052, *3 (D. Ariz. Oct. 25, 2017) (granting "Federal Defendants' request," under Rule 59(e),

4    "to amend the Court's prior judgment to limit vacatur of the [challenged ESA decision] to the

5    District of Arizona"); *W. Watersheds Project v. Kempthorne*, No. 07-cv-161, 2008 WL 4649130

6    at *6 (D. Idaho 2008) (amending judgment in response to Rule 59(e) motion to impose date-

7    certain deadlines).

8           Likewise, for several reasons, this Court should grant this motion and, given the Court's

9    decision not to vacate the ITSs, require compliance with its merits order (i.e., formulation of

10   objectively verifiable ITSs) no later than sixty (60) days from the date of any order resolving the

11   instant motion in Plaintiffs' favor.

12          *First*, the Ninth Circuit has expressly recognized a district court's "discretionary authority

13   to impose a deadline [on] the remand proceedings" under Section 7 of the ESA. *Nat'l Wildlife*

14   *Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 937 (9th Cir. 2008) (citing *Nat'l Org. of*

15   *Veterans' Advocates v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1381 (Fed. Cir. 2001)). Courts

16   routinely exercise that discretion to impose deadlines when remanding (without vacatur) flawed

17   consultation decisions under Section 7 of the ESA. *See Ctr. for Food Safety v. Regan*, 56 F.4th

18   648, 669 (9th Cir. 2022) (directing action agency to "complete [its] ESA" consultation

19   requirements "immediately"); *see also San Luis & Delta-Mendota Water Authority v. Salazar*,

20   686 F. Supp. 2d 1026, 1051 (E.D. Cal. 2009) ("In this case, FWS was ordered to issue the new

21   BiOp by [a date certain]."); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No.

22   Civ. S-06-284, 2011 WL 1636235 (E.D. Cal. Apr. 29, 2011) (imposing a deadline on consultation

1   "[b]ecause . . . without a sufficient BiOp, the possibility of irreparable harm to the species

2   remains, and there is therefore some urgency in issuing the new BiOp").

3       *Second*, the conservation status of this particular species, the most endangered in the

4   United States, merits careful attention to any interim effects on the species caused by the actions

5   to avoid tipping the species beyond the point by which it can recover. Indeed, the record here

6   emphasizes that this species, stranded on Mount Graham and facing habitat constriction from

7   above and below in addition to more frequent and more intense wildfires, is extremely

8   vulnerable to extinction from "stochastic events . . . under most circumstances." FWS04124; *see*

9   *also* FWS06378 (same); FWS01559 ("Given the current severely endangered status, the loss of

10  even a few acres could be critical to the survival and recovery of this species."); FWS04374

11  (explaining that "[w]hether a [catastrophic] disturbance event occurs will unfortunately be a

12  *when* rather than an *if* scenario for many species of conservation concern" like the squirrel).

13      *Third*, concerns over interim take jeopardizing the squirrel during remand are especially

14  valid given that the substantive flaw identified by the Report, and adopted by the Court,

15  undermines the very mechanism (ITS) meant to detect the actions' effects and prevent them from

16  rising to the level of jeopardy. ECF No. 141 at 17 (holding the ITS unlawful because it gives the

17  agencies "unfettered discretion" to decide whether further consultation should be required while

18  also precluding any objective evaluation of that decision). Because the operative ITSs lack "clear

19  parameters" specifying "the cause of a lack of midden activity," *id.*, they do "not permit the

20  [consulting agency] to halt the project and reinitiate consultation" if its effects are "considerably

21  higher than anticipated." *Or. Nat. Res. Council v. Allen*, 476 F.3d 1031, 1041 (9th Cir. 2007).

22  Thus, an extended remand of more than a few months could be devastating for a species that

23  FWS itself previously determined to be in an ongoing state of jeopardy, even though its

1    population numbers and habitat availability were far greater at that time than now. *See*

2    FWS01558-59, FWS01608.

3        *Fourth*, Plaintiffs' proposed deadline—sixty (60) days from the date of any order

4    resolving this motion—is reasonable in light of the particular circumstances of this case. As

5    explained above, Defendants are no longer contesting the Court's ruling that the ITSs violate the

6    ESA, and their own representations during this litigation are that the defects identified by the

7    Court can be "readily remedied." ECF No. 144 at 1.

8        Accordingly, it has now been more than six months since Defendants declined to object

9    to the Magistrate's recommendation on the ITSs and indicated they could and would be working

10   expeditiously to address the violations identified in the Report, ECF Nos. 146 & 146-1. This is

11   already far longer than either the 135-day deadline imposed by Congress for completing Section

12   7 consultation under the ESA, 16 U.S.C. § 1536(b)(1), or the timeframes for routinely ordered by

13   courts when the consulting agencies no longer oppose remand to correct a deficient decision. *See*

14   *Ctr. for Food Safety*, 56 F.4th at 657, 669 (directing action agency to satisfy its consultation

15   duties "immediately" but in any event "within 180 days of the mandate being issued"); *Nat'l*

16   *Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, No. 01-cv-640, 2004 WL 1080168 at *2 (D. Or.

17   May 14, 2004) (granting agencies' request to complete a new BiOp within 90 days of the court's

18   order); *S. Yuba River*, 2011 WL 1636235 at *4 (ordering agencies "to complete the new BiOp"

19   within six months of the Court's order); *Wild Fish Conserv. v. Quan*, No. 23-35322, 2024 WL

20   3842101 at *2 (9th Cir. Aug. 16, 2024) (unpublished) (directing agency "to adhere to [the]

21   deadline" it "repeatedly committed" to meeting during litigation, and noting that the

22   considerations necessary to "justify remand without vacatur would be significantly altered if

23   courts could not rely on agencies to act promptly on remand").

Taken together, these considerations weigh heavily in favor of instituting a deadline for Defendants' remand proceedings to prevent "manifest injustice"—namely, the lack of a legally adequate trigger for reinitiating consultation when necessary to address threats to a highly endangered species. *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1108 (9th Cir. 2012) (explaining that a lawful ITS is crucial for "monitor[ing] the impacts of incidental take" to identify exceedances of the ITS, and if such monitoring shows "reinitiation of consultation is required, the original biological opinion loses its validity, as does its accompanying [ITS], which then no longer shields the action agency from penalties for takings" (quotation marks and citation omitted)).

The modest amendment proposed here is especially prudent in light of Congress's intent in enacting the ESA to "afford[] endangered species the highest of priorities" so as "to halt and reverse the trend toward species extinction, whatever the cost." *Tenn. Vall. Auth. v. Hill*, 437 U.S. 153, 184, 195 (1978).

## **CONCLUSION**

The Court's final judgment should be amended to require Defendants to complete remand proceedings in response to the Court's merits order sixty (60) days from the date of any order resolving the instant motion for all of the reasons above.

Respectfully submitted,

        /s/ *Matthew R. Arnold*
Matthew R. Arnold
DC Bar No. 1618616
Eubanks & Associates, PLLC
1629 K Street, NW, Suite 300
Washington, DC 20006
Phone: (843) 718-4513
matt@eubankslegal.com

William S. Eubanks II

1
2
3
4
5
6
7
8

DC Bar No. 987036
EUBANKS & ASSOCIATES, PLLC
1629 K Street, NW, Suite 300
Washington, DC 20006
Phone: (970) 703-6060
bill@eubankslegal.com

*Counsel for Plaintiffs*